Welcome to the Fifth Circuit. We are here for a special sitting in this very interesting case which we have heard once before, as you all know, and now it's back. And so we are delighted to see you all again, those of you who are returning and those of you who are new. We, as you all know, you all know how the lighting system works, so I need not remind you to finish up your thoughts when the red light comes on. We have a number of lawyers arguing and you all have helpfully divided up your time. I know you have some extra time as well, which has been figured into the proceedings. So with that, I guess I haven't called the case, have I? We'll call number 23-10520, National Horsemen's Benevolent and Protective Association, et al., versus Black, et al. And so first up for Gulf Coast Racing will be Mr. Worman, or Professor Worman. Hello. Good afternoon. Thank you, Judge Donkin, and may it please the Court. Elon Worman on behalf of the Gulf Coast Racing Plaintiffs. Your court has upheld the exercise of government power by persons not properly appointed under the Appointments Clause and is being consistent with the private non-delegation doctrine. The first situation in which the exercise of government power is exercised episodically or is a discrete part of some larger regulatory scheme, Borsig and Redig are obvious examples from the Fifth Circuit. That's not what we have here. Here we have an all-encompassing regulator. Well, the only time that any court has upheld the exercise of government power through an all-encompassing regulator and not headed by an officer of the United States and consistent with the private non-delegation doctrine is the case of self-regulatory organizations like FINRA. But what makes FINRA self-regulatory is two things. The first is that the regulated individuals are actually members of the organization. They get together in an annual meeting and they elect the people who will impose the rules on themselves. So it's self-government and there's a right of exit under the statute whether it's exercised or not. Here there's there's none of that. Here it's just Congress empowered a particular organization to regulate other people on an ongoing and significant basis. The conclusion I think that follows is either that violates the Appointments Clause because only government of properly appointed officers of the United States can head a regulatory agency or it violates the private non-delegation doctrine because it's not discreet like in Redding and it's not a self-regulatory organization like FINRA. We think we win under either theory, your honors, but the Gulf Coast plaintiffs are here to raise the Appointments Clause claim and to say that we think the easiest way to solve this case is the Appointments Clause. And that's because the test under the Appointments Clause is do they exercise significant and ongoing authority under the laws of the United States? And here they do. They exercise the exact same powers that the officers did in Lucia, in Free Enterprise Fund, and Buckley v. Vallejo. Buckley v. Vallejo said the two particular functions that could only be exercised by an officer of the United States is the power to flesh out the statutory standard. Counsel, let me go back. Are there any aspects of the authorities power that do not fall under the FTC's larger or ultimate decision-making authority? I think that's for purposes of the Appointments Clause, your honor. I don't think it matters one way or another because they may be inferior officers. Assuming the FTC does have total control, then they would still be inferior officers. But inferior officers do have to be properly appointed according to the Appointments Clause. And I'm referring to my aligned counsel who are making the private non-delegation argument as to whether there are specific factors that the FTC can or can't control. But for purposes of the Appointments Clause, we don't think it matters because the test is significant and ongoing authority under the laws. And Lucia specifically rejected the proposition that you have to have final decision-making authority to be an officer. That was the position of the dissent in Lucia by Justices Sotomayor and Ginsburg, and it was rejected by Justice Kagan and the majority in the case. The only difference we think this case has from those cases is that the statute describes the authority as private, but that doesn't make a difference, I think, for two reasons, your honor, or there are many reasons, but let me just mention two of them. The first is, what if Congress enacted a statute that specifically named the nine directors and said they are hereby appointed to execute the statute? Does anybody doubt that that would violate the Congress enacted a statute saying the authority incorporated is hereby empowered, it happens to be run by these nine directors? Either that's exactly the same thing as directly naming the nine directors, or it's delegating the president's appointment power to the authority. I mean, Peekaboo was described as a private authority and free exercise fund, free, sorry, enterprise fund. Let me ask you sort of a more basic question. The other side is saying, and there's some, you know, there's, I have to say there's some logic to this position, which is, we treated this case as a private non-delegation case, obviously. The word private is all over the opinion, obviously. And so, therefore, we have sort of implicitly or sub silencio already decided that this isn't a public entity, and so, therefore, all your cases that you're talking about just don't apply. I would say three things to that, your honor. The first is, of course, footnote 11 of the opinion says this case isn't before us, the appointments case isn't before us, so I think you reserved it, but even if that's wrong, all the cases that the district court relies on and that the defendants rely on for this proposition that it's above precedent say that a predicate to a holding is precedential, has binding force, if it would meet the test for collateral at stop, if it was actually litigated. Yeah, I get that. Look at the Amtrak litigation, Amtrak 1, 2, 3, 4 from D.C. Circuit's SCOTUS back to D.C. Circuit. The first time we did rely on Amtrak 1, which subjected Amtrak to a private non-delegation. The Supreme Court then said, well, that wasn't correct. I guess it vacated because it said it's actually a public organization, it's actually a governmental organization. If we were to address the, if we agree with you that we can reach the appointments issue, are we in effect reversing ourselves? I don't think so because, again, it wasn't actually litigated for purposes of collateral estoppel, but even if that's wrong, Your Honor, even if that's wrong, so to answer your question, and I think the reason Amicus brief is particularly helpful here, and we try to make this clear as well in our briefing, but whether you're private or public is actually irrelevant to the Appointments Clause claim. The Appointments Clause says if you exercise ongoing authority under the laws of the United States of significance, you must be properly appointed. It doesn't, everybody is private until a statute gives them ongoing authority of that kind, and that's when they have to become public. So even if this Court, which I don't think it did, it didn't decide that it was private versus public. It was just not presented with that. Even if you did, we just don't think it's relevant because the test is whether they exercise significant authority. Well, you know, going back and rereading the opinion in the first time around here, we focused on the rulemaking part of HISA, and effectively, I'll just paraphrase my own opinion and say, you know, a private entity, let's assume putatively a private entity like HISA, the authority, can be relied on to give advice, to give, hey, you should have these rules. Here are some great rules. We know about horses, here are some rules. And then the FTC has to have oversight, has to be subordinate to the FTC. Here, so there's that. I mean, that's decided. I mean, we're not going to reverse that. But we didn't decide, for example, anything about enforcement. Also, you'll note a footnote in the said, there's nothing about enforcement in the case. So, you know, I wonder, the parties are arguing about the limits of our decision. But I mean, to the extent that, I guess, what am I asking? I'm not sure. If you got rid of all the rulemaking stuff, there's still the enforcement part of it. I would go back to Buckley v. Valeo. The two functions were fleshing out the statutory standard through rulemaking and enforcing the statute. They say ensuring compliance through adjudicatory proceedings and bringing actions in district court. This was the FTC? This is Buckley v. Valeo. This was the Federal Election Commission. And that's what happened there. And let me just, I guess, end this line with the Free Enterprise Fund. I think we, as we try to make clear in our briefing, in Free Enterprise Fund, the Supreme Court decided that two layers of forecast removal is unconstitutional. They did so on the assumption that the first layer was there, that the SEC officials, directors could not be removed at will. They said, we decide the case on that assumption. If an SEC commissioner were removed, and this were actually litigated, would anybody say that the Supreme Court's decision in Free Enterprise Fund decided the question of whether SEC officials could be removed for cause? They didn't. They assumed, for purposes of the dual forecast holding, that that was the issue. So we don't think you're bound by that, Your Honor. And again, we think the test is a functional one. It doesn't matter what the statute labels them. Do they exercise significant and ongoing authority under the laws of the United States? Here they do the exact same functions as in Lucia, Free Enterprise Fund, and Buckley v. Vallejo. And what they call themselves just doesn't matter. The Constitution deals with substance, not shadows, Cummings v. Missouri, many other cases. Thank you, Your Honor. Thank you. I know you have a limited time here, but thanks for speaking fast. I was told not to do that, Your Honor. Well, that's okay. We understood you. Next, we'll have Mr. Sear for NHBPA. Good afternoon. Good afternoon, Your Honors. May it please the Court. Let me start with Judge Englehart's question and list off seven different ways in which the FTC does not exercise total control. So let me start by noting, as to legislative powers, that in Free Enterprise Fund, the Supreme Court said legislative powers, rulemaking is not a sufficient tool to control a subsidiary entity. Texas quotes that section in its brief, that rulemaking isn't a tool, a sufficient tool. But even within the context of rulemaking, there are three ways the FTC does not have control. There's initial rulemaking, at which point the FTC is bound by law to accept the legislative power dealing with taxes, fees, and budget, which the authority has complete control over without the FTC under the statutory text. And then there's the guidance and sub-regulatory guidance, which the FTC has no control over under the terms of the statute. So that's simply in the legislative realm. Judge Duncan points us to the executive part of the authority's functions, and I would point to two examples there. The FTC has no control over searches and seizures. If the FTC were doing its own search and seizure in an administrative context, it would need a warrant. It would have to go to a federal magistrate judge to get permission to do that. The authority does not need a warrant from a neutral officer. In fact, it doesn't even need approval from the FTC. It can search and seize evidence from my clients at will. The other thing it can do in the enforcement realm is exercise prosecutorial discretion. We see consistently that the authority decides sometimes we're going to bring cases, sometimes we're not, but there's no role for the FTC. And finally, outside those two realms, I would mention its ability to choose voluntarily to bring additional horse breeds within its regulatory authority. It can agree with another private organization to extend the effect of federal law to an entire industry, which is kind of crazy to think about. Like, there's nowhere else, even in FINRA. Like, FINRA couldn't say, well, we do stockbrokers, but we'd also like to start doing other types of financial advisors. Like, you can't do that. I guess if we were to follow the Sixth Circuit's opinion here, I guess Chief Judge Sutton would say, well, the new, the amendment allows the FTC to promulgate rules that would take care of all these issues. Respectfully, Your Honor, I don't think that's true because the amendment does not allow the authority to rewrite the statute. And so on something, for instance, like the power to set taxes, fees, and budget, that's just in the statute. It just says in Section F of 3052 that that is a power that is reserved exclusively to the authority. On something like guidance, the statute gives the authority the power to issue guidance. It gives the authority the power to issue supplementary technical documents. And so the 3053e power can't undo that. On additional breeds, the statute gives the authority the power to enter these agreements. Again, you can't use the rulemaking process to override the clear sex of the statute. And finally, I'd mentioned the board and CEO as the seventh example. If you look at other contexts where there are private non-delegations, there is still a role. The SEC can fire somebody off the FINRA board. The USDA Secretary can fire somebody off of the Agricultural Marketing Board. There is no role for the FTC, let alone the President and the Senate, to exercise any control over who leads the agency. Again, you mentioned the Sixth Circuit. Look at the United Service Fund, a universal service fund case from the Sixth Circuit recently. One of the things that the FCC can do is appoint the members of the USCC board, and it can appoint the CEO of the USCC. Those are powers that simply aren't present in this case. This delegation remains, as this court said the first time, far beyond the boundaries of anything we've seen, even in the context of private delegation in the past. I'm glad you mentioned the Sixth Circuit opinion, Your Honor, because I think there are several important differences between our case and the Sixth Circuit. Obviously, we start out with the question of the legislative power. I think this court's opinion, the first time around, identified three problems. Congress fixed one of them. We've still got two problems to go. We still do things on a consistency review basis initially. The authority is still responsible for proposing the initial program, establishing the initial program as a statutory term, and they can't amend the rules when they're initially proposed. Even setting those things aside. You're saying the amended provision means, in your view, that they can't amend the ... Sorry, say what you ... Yes. Not even my view, their view. They acknowledge this in their ADMC order. When the authority proposes a rule, the commission cannot amend the proposed rule. It has to wait until it approves the rule, and then go through a new rulemaking process, which may take several years before it can modify it, but it cannot modify an initial rule when it's proposed. It has to take it as a package. Chief Judge Sutton, though, in his opinion, I think distinguishes our case in that he acknowledges that there's no original meaning or historical argument brought by the parties. It's not brought in his phrase as a categorical vesting clause challenge, and we have brought a categorical vesting clause challenge. We just say this is not how our three branches are structured. That's one important distinction. Two other distinctions I had mentioned. There's no argument in the Sixth Circuit case about guidance. I think the guidance argument is extremely powerful, because it shows a consistent pattern on the part of the authority of essentially rewriting the rules. The rules on race day aren't set by the FTC. They're set by the authority. If you want to know what the rules are, you have to go to the authority's website, not the federal register, because the authority is consistently using its statutory power of guidance and subregulatory guidance to rewrite the rules. That argument wasn't made in the Sixth Circuit. In your view, does the FTC, I mean, I just want to hear your argument on this. Does the FTC supervise the enforcement of the law by whoever's enforcing it? No. There's no rule for the FTC. I mean, isn't there a candidate enforcement action go up to the ALJ and then to the FTC? So if the, yes, that is true. So if the authority chooses to charge, which first of all is not a given, then if the authority's ALJ convicts somebody of a violation, that person can appeal that violation. Is that always the case? Does it always go from authority to ALJ to commission an enforcement action? In other words, I'm asking, can the authority also, actually that could have been an eighth example. So there's a separate statutory provision that allows the authority to bring an injunction action in federal district court if it believes that there are some circumstances that justify it. Does the FTC have to approve that? It does not, which I think again is telling that when the authority is using substantial powers, in fact, in that particular instance with the injunction, it says in the statute the authority doesn't have to post a bond, which is a privilege that's only given to agencies of the federal government and this particular private non-profit organization. So again, I think it shows. What would it be seeking an injunction to do? Close the racetrack. So we had 11 deaths in Churchill Downs this year, right before the Kentucky Derby. The week of the Derby, there were 11 deaths. And the authority, according to public news reports, was, of course, the entire industry was deeply distraught over that. We knew, in fact, the authority said at the time that Churchill Downs, the host of the Kentucky Derby, was fully compliant with all of the rules and standards for racetrack safety. But the authority said publicly that they needed the power to be able to shut down racetracks through an enforcement order. And that's, in my view, exactly what the injunction circumstance is for. It's for instances where you can't let the administrative process play out. You're not going to wait through three levels of ALJs. You have to do something right away. That's why we have things like injunctions. And so that's a power that the authority has that it has threatened to use against racetracks, which, in that circumstance, the racetrack decided to voluntarily suspend operations. Perhaps not unsurprising, after its regulator threatened doing something more significant. But it's another example of where the authority— —shut down extra-judicially. Is that your point? Or they have to get an injunction. Under the statute, the authority has the power, without FTC review, to go to a federal district court and secure an injunction to do something like close a racetrack. Yeah. Thank you, Your Honors. I see my time has expired. Thank you, Kelsey. Okay. And last but not least for the appellants, Mr. Cole for the state of Texas. Good afternoon. Thank you, Judge Duncan, and may it please the Court. HISA continues to violate the private non-delegation doctrine in at least three spheres. First, with respect to the capacious lawmaking authority powers it still gives the authority. Second, as you suggested earlier, the broad enforcement powers. And third, with respect to this quixotic provision that allows it to expand its own jurisdiction. And really, the scope of congressional statutes, I don't think I've seen anything quite like— I disagree with the Sixth Circuit. I think that was brought up in the Sixth Circuit opinion, the expanding the breeds. I believe the Sixth Circuit said, well, look, under the amended rules, the FTC could fix that problem. We do disagree with the Sixth Circuit on that, Your Honor, and let me go to the effect of the amendment now, if I might. So the amendment is a modest amendment, 3053E. It allows the authority to engage in notice and comment rulemaking under the APA in certain limited spheres. But note that the amendment doesn't change many of the underlying features of the act that this court pointed to in the prior opinion. So the authority's power continues to be sweeping under the statute, under 3055, under 3056 in particular. Now, the amendment, as I said, it doesn't change this power to create entire industry programs out of whole cloth. Recall it's just a minor amendment here. Now, my friend on the other side, their response is, well, look, this is a generalized lawmaking power. And I think the Sixth Circuit said that as well. We disagree with that for a couple of reasons, Your Honor, and I'd like to walk through that now, if I might. The first is, I think, take a look at the verbs of the statute. The verbs there are abrogate, modify, and add to. Now, abrogation and modification, I think, presuppose something pre-existing that's being abrogated or modified. Now, my friends on the other side point to add to, and they say, well, this is sort of our silver bullet here. We can add to the entire body of rules as soon as the authority promulgates even one, it seems like. Well, I think under the Nostratiosus, the court should interpret the add to language in the same manner as it does with respect to the abrogation and modification. It's a modest power. It's not this big power that allows it to go create any rule it wants, I think, for any purpose. Note as well, I mean, the definition of add to in Black's Law Dictionary supports that. And one that I found, indeed, there's the definition of amendment has a definition that says amendment by adding. And it says, an amendment that places new wording at the end of a motion or paragraph or other readily divisible part within a motion. It's a modest thing in the context of amendments. And you'll note that the begins with amendment. So again, we think this statute, all it does is this amendment allows the authority to modify the pre-existing rules. We don't think it allows the commission to come in here and start making up new procedural rules to hem in the authority, because that's essentially what they're saying, right? They're saying, look, we understand that the authority's rules, once they make it through the consistency review process, those rules are in place. They govern unless and until we can push through. A quick question with respect to expanding to new breeds. Is that that comes from the statute? It does, yeah. So, well, okay. So in order, I mean, the commission obviously can't, by rulemaking, change the statute. Of course not. But I mean, that's kind of, I think, what their, what the upshot of their argument is. I mean, be sure to get to the enforcement part, because I've obviously said. Sure. No problem. Turn to that now. So the enforcement piece, the one big piece of that, I think, is that, as my friend, Mr. Sir said, HISA gives the authority, the power to initiate lawsuits in federal court to enforce the authority's rules or the provisions of HISA. There's no role provided for the commission in that. And this is section 3054J. It also has the further power to launch investigations and the of course, they say, look, there's back-end review, right? There's an ALJ, and then it can go to discretionary review by the FTC. But that's for the civil penalties piece. It's not for bringing lawsuits in federal court. And I think this ties a little bit back into the lawmaking piece, because their argument again is, well, look, we can create a bunch of rules that again, hem in the authority of the, the power of the authority here. The commission basically takes that position. But again, that's, they're sort of busy designing an act that Congress did not pass. Congress didn't decide to hem in the power of the authority in this way. And so to read, I think, 3053E to permit them to sort of put all these safeguards, I mean, pre-clear lawsuits, I think is one of the things they say. Well, I note actually that the Free Enterprise Fund is pretty instructive. The Free Enterprise Fund case is pretty instructive on this because there, the Supreme Court said, in the context of the SEC, by the way, it said that enacting general rules to the required notice and comment procedures is obviously a poor means for a federal agency to micromanage a subordinate entity's affairs. And you'll note actually the next sentence, the, the court says, well, the SEC's response is, well, maybe we'll just create a rule that says the, the SEC has to basically approve anything that the PCAOB does. And the court says, well, that's not, that's not going to work because there's a statute that basically prevents them from doing that. Now they might say, my friends on the other side might say, well, there's no statute, kind of like the one in Free Enterprise Fund here. But I would argue that the structure of the act is, is basically what that type of reasoning would contravene. Because the structure of the act is crystal clear. I mean, it's, it's a finely grained statute in 3055 and 3056. It parcels out specific duties for the authority. And it, quite limited ones for the commission. And if the commission takes this amendment and says, this allows us to essentially upend the entire statutory structure, I think you have a big problem on your hand. Because as you said, the, the federal agency can't rewrite congressional statutes to cure what is an unconstitutional delegation. That's, that's the Whitman case, of course, that we cite. And so I don't think that's the, the, that rulemaking is a way they can hem in, Judge Duncan, the enforcement power that you're talking about. Because I think, as I understand their briefing, that's the essential argument. We'll hem in the broad enforcement and lawmaking power that the authority has by creating rules. Again, we think the text of the amendment does not admit of that of a power. You have time for rebuttal, Mr. Cole. Thank you. All right, Mr. Busa for the FTC. You argued last time, right? Sorry, you argued last time. That's right. Well, here you are again. Thank you. It's always a pleasure to be back in front of you, Your Honors. Good afternoon. I hope you saw on behalf of the federal government. I'm mindful of my time. So I hope you don't mind if I talk a little faster than normal. Look, in the first appeal in this case, this court said a private corporation like the authority may serve an important function in aiding in the administration of a federal regulatory scheme, provided that the corporation functions subordinately to a public agency. The one defect this court identified, the thing that it said it was key in reaching its conclusion, that's at page 887 and 888, was the lack of general rulemaking power. Congress swiftly supplied it. Judge Sutton, Chief Judge Sutton, in a very well-reasoned opinion, explained why the supplying of that power ensures that the authority is subordinate to the FTC in every respect, rulemaking, and when it comes to discipline. And this court should affirm on that basis here. I'm welcome to take whatever questions. Sure. On the enforcement point, I mean, do you agree or not that the authority itself can go into federal district court and bring a civil lawsuit? We can do it to enforce civil penal, civil sanctions as well. Without, I'm sorry, without, without, without the say-so of the FTC. So the statute doesn't say anything about one way or the other about the say-so of the FTC. This is 3054-J. Yes, correct. So, so that statute doesn't say, oh, and they can do it regardless of what the FTC has to say on the subject. Chief Judge Sutton made very Because when it is seeing the rules that the authority is proposing or actions that it's taking in the world, the FTC has a choice to make everywhere and always. Do I want to allow this or do I want to shut this down? If I want to shut this down, I can create a rule right now to shut it down. A rule that will give me granular control over everything they were just talking about. Judge Sutton explains, look, on the face of the statute, the FTC can create a rule of the to get an injunction against anybody. First, we got to go to the FTC and make sure that they're okay with this and give them a chance to shut us down. Yeah, I hear what you're saying. And you're right. You're right. Chief Judge Sutton does say that. So in your view, then we, I guess, let me ask it this way. If the FTC can't do that, let's just say, hypothetically, the FTC can't do that. We shouldn't read the new statute to allow the FTC to do that, to sort of put a put a leash on the authority to say, okay, we have to okay your lawsuit under 3054J. I guess. So if we, what I'm trying to get at is, do we have to read it that way in order to save that part of the statute, at least? You don't have to engage in any gymnastics to save any part of the statute. I hope I can outline two reasons why. First, just when it comes to standing, no one has said there's any imminent threat of anyone bringing an injunction action against any of the plaintiffs before you today. For that reason, you actually don't need to address this. It's much better addressed in an as-applied challenge. But setting all of that aside, nothing in the statute here says, oh, they can do, the authority can do x, y, and z, notwithstanding any other provision of this statute that would give the FTC plenary rulemaking power over the rules of the authority. That's what they need to identify to say that, oh, actually the FTC is somehow disabled. But what we have on the face of the statute is the text of 3053E, which says in an unadorned way, no exceptions. The commission, by rule, may abrogate, add to, and modify the rules of the authority, dot, dot, dot, as the commission finds necessary or appropriate to ensure the fair administration of the authority. So if we think, oh, there's something going on there in some kind of disciplinary proceeding, it's not fair, we can shut it down by a rule. And we can do that in the rulemaking now, make them come pretty clear things with us. And if we're not making that rule, it's because the FTC has thought, actually, I'm okay with what's going on. Everywhere and always, whatever's going on is because the FTC is letting it go on because of this power. You know, we talked about ensuring the fair administration of the authority. There's conforming the rules of the authority to the rules that the FTC has created, and there's otherwise and furtherance of the purposes of this chapter. Judge Sutton, looking at that language, focused on the last part there, said the purposes of this chapter, that covers the waterfront of everything the authority can do under this chapter. So if there's anything they can do, we can tell them to do it, do it better, do it different, stop doing it. That's what this statute means. What they want to do is rewrite it. They wish Congress had passed a statute that says, oh, actually, FTC only has the modest authority to do very small things. They can't actually make the conform to the rules the FTC creates. They can't actually do... Trevor Burrus I mean, look, I mean, I assume that the reason the amendment is written the way it is, is that it mirrors the Maloney Act. Judge Sutton That's exactly right. Trevor Burrus Is that not right, Your Honor? Judge Sutton Yeah. And this... Trevor Burrus I thought so. Judge Sutton And this court said in the first appeal in this case, look, that language, that specific language from the Maloney Act, it's a clear hierarchy. That's your words. That's also what's required by Adkins. Trevor Burrus Yeah, I hear what you're saying. And that's a powerful argument. And I know that the Sixth Circuit said that when we said that about the Maloney Act in our previous opinion, we were talking about rulemaking. We're talking about making rules and that the commission has to have the authority to essentially not just take the policy choices of it. That's what we said. And look, and I will carefully consider your argument as it applies to the enforcement piece of HISA. But the fact of the matter is that we weren't talking about that when we were talking about the Maloney Act. I don't know what FINRA's enforcement authority vis-a-vis the SEC is. Can FINRA go in and bring enforcement actions and unconstrained by the SEC? Or can the SEC sort of say, no, no, you can't do that? Judge Sutton My understanding is that the two structures are materially similar in this respect. FINRA can bring an initial adjudication, initial sort of discipline proceeding with de novo, two layers of de novo review in the agency. And I want to focus on that for a second, because that is crucial here. Every court that has been faced, that has faced this private non-delegation challenge to the FINRA-SEC relationship, every one of those courts has said it's enough that the agency has de novo review. And so when you get the result of a disciplinary action from the private organization, now you have it for the public agency, you can tell them to knock it off. You can say, no, that, that, you know, that sanction you've issued, that's ridiculous, or this factual finding is completely incorrect. That's the power that is required under Adkins. Every court, every court that's reviewed SEC FINRA has said that. But what we have here is we have more than that, right? It's more than just de novo review of a final sanctions order. We also have all the frontline capability to say, oh, you need to come to us to pre-clear the following investigative steps that we think are pretty intrusive, or, hey, we're hearing from— of things that he felt like that he's arguing are outside the scope of the FTC's authority or review. How do you respond to those? So if I'm remembering correctly, he was mentioning the breed election provision in the statute, is that correct? That was one of a few. That breed election provision doesn't say, notwithstanding any power the FTC might have, the private authority has the sole and exclusive power to recognize a new breed. It actually just says that, look, a state can make an election. They send that election to the authority. And by the way, the FTC, even under that part of the statute, reviews that election to see if there's actually room in the budget for it. But separate apart from all of that, there's the broad plenary rulemaking power that Congress added in. So we can make a rule for the authority. What's your response to—both two attorneys on the other side have brought up—I call it peekaboo—that— PCAOB. PCAOB. Free Enterprise Fund. Yeah, that. Free Enterprise Fund. That rulemaking is not a sufficient means of controlling the subordinate board or whatever it is. What's your response to that? Free Enterprise Fund was dealing with the question of what means of control would be adequate to substitute for the president's removal authority of people who are within the government. Right. That's a different question, right? What you know from Adkins and from all of its progeny is that, look, the coal board in Adkins, the coal commission, the public agency, had the power to review the proposed prices and then modify them if it wanted to. That was adequate to control the private coal boards in Adkins. So it's adequate here. That doctrine applies. It governs in this circumstance, just as this court said in the first opinion in this case. Okay. So I hope I addressed the predilection of merits, but— I believe he also mentioned inspection authority without a subpoena. Search and see. Yeah, that type of thing. Right. So nothing in the statute says, notwithstanding any rule of the authority that the FTC might make for the authority, the authority nonetheless gets to do all of this, right? To be more specific, what would an aggrieved party whose records are inspected with or the response is that, well, the FTC can always undo that or unring that bell or say, oh, you did it. It was an improper imposition. Is that— My first thought, Your Honor, is that someone who's injured in that kind of concrete way could of course bring an as-applied challenge to test whether that violated their legal rights in any respect. That's not what's going on here. To be clear, this is a facial challenge. You look at the face of the statute and say, does this statute put the FTC in the saddle in your words, Your Honor? Does it put it in charge? That's the question. And clearly on the face of the statute, the FTC is in charge. And just to answer the question, I guess, more directly on the merits, right, if there's somebody who says, oh, the authority is really—it's going a little off the rails in this area. Look at this investigation. FTC might want to do something about it. FTC can look at that and be like, we do want to do something about it. Now using our plenary authority, we're going to shut it down. The example of the injunction was given, seeking an injunction to say, shut down a racetrack of horses. Can the authority go into federal district court and seek an injunction without the FTC? What if that happens? I mean, that sounds plausible to me. What if that happens? So I think this goes back, Your Honor, to—I think that was maybe the first question you asked me, actually, was about that injunction authority. And my response is, this is a facial statute, and on the face of the statute, FTC is in the saddle here. It could create a rule of the authority. Any rule that it thinks, its judgment, is necessary or appropriate. Well, I mean, the difference between facial and as applied, as you know, under Salerno is that under no certain circumstances could there be a constitutional application of the statute. So it sounds like what you're saying is, well, if the authority did seek an injunction in this, it could be constitutional because the FTC could make a rule that would require FTC approval before the authority did that. I'm saying, Your Honor, that the FTC could prohibit the authority from doing that in the first place. It could require plea clearance before doing it. It could also, after the fact, create a rule saying, well, no, that lawsuit needs to be withdrawn. A rule of the authority is that this lawsuit is now gone, and you'll withdraw that. I understand your argument. To be clear, though, that has not been done, right? There is no such rule. Well, right. And just to be clear, no one has said there is any imminent threat of anyone going to the court to get an injunction, right? So when it comes to rulemaking, I understand why there might be standing on a facial as applied basis to say the entire way in which this statute functions is unconstitutional, and to come into court on that basis. But when it comes to discipline, I think you need to in which you can test these things at a very granular level and really figure out what's actually happening in that circumstance. The job of this court or any court is not really to look at the entire statute and say, is there something I could try to poke a hole in here if I invented the hypothetical? That is not how facial review works. Right. It's the slander standard that you applied in your first opinion in this case. Please continue. Sorry. So I see I have two minutes left, and I'm wondering what would be most fruitful to address in those two minutes. I mean, look, we think that this court's opinion in the first appeal settles the issues here. Well, that's what it said. You think Congress fixed it? Congress fixed it. Responded to the opinion, they fixed it just like that. Right. And they don't actually have an appointments clause challenge. They have a private non-delegation challenge that they've just stuffed under some heading in their brief that says appointments. Well, it's different. I mean, to be fair, it's different parties who are bringing a different a different... No, I understand that, Your Honor. But what they are objecting to is they're saying no private entity can wield this kind of power, regardless of how subordinate they are, regardless of the degree of supervision that the public agency has over them. That is squarely inconsistent with 100 years of Supreme Court precedent, almost 100. So the appointments clause is just different. It deals with the internal organization of the federal government. And before my time runs out... Well, would you agree, though, that what Congress denominates the authority as a private, you know, non-profit organization is not controlling for an appointments clause? I absolutely agree with that. It's because it's the LeBron test that is controlling. The question is, are you part of the government for these constitutional structural purposes? The Supreme Court has been very clear about that. It's the holding of Free Enterprise Fund. It's the holding of Amtrak 2015. And Aurelius, a very recent case, it puts the nail in the coffin of the argument that all that matters here is whether you could think that someone is exercising significant authority. There, the Supreme Court says, look, yeah, we recognize that not only is LeBron met because this governing board was created by Congress. So not only is it part of the government, and not only does it obviously have significant authority, the question really is, are they officers of the United States? And so it outlines our entire brief there. It says there's these threshold questions. Are you even part of the government? The whole test is not, is there significant authority going on here? And the private non-delegation doctrine... I'm sorry, Your Honor. No, no, I understand. The private non-delegation doctrine is already designed to protect accountability interests. You think the private non-delegation part of it is inconsistent, sort of an irreconcilable tension with the appointments clause, right? I think that. They also think that. That's how they briefed everything in district courts. And more to the point, the Supreme Court thinks that. On Amtrak 2015, the D.C. Circuit said, we've got a private entity here, and that private entity violates the private non-delegation doctrine. The Supreme Court said, this is an either-or situation. They're either private and subject to that doctrine, or they're part of the government and subject to the appointments clause. And they've decided, applying LeBron as drawing that line, they're actually part of the government because their government created government appointed. That is not like this circumstance. And just to close out, I know I'm out of my time here. There is no argument from the other side. They've satisfied the LeBron test. They've got no argument that they're part of it, that this is part of the government. I will ask. Thank you. Mr. Shah. Welcome back again. Thank you, Your Honors. May it please the Court, Pratik Shah for the authority. Defendants, I realize I am the fifth advocate. That's okay. So I'll try to cut to the chase on the two main, yet mutually exclusive claims at issue here today. Let me start with the Sixth Circuit Chief Judge Sutton opinion, and then go from there to see if there's any daylight left with the arguments that have been talked about today. Look, as Chief Judge Sutton explained, and I think it's also helpful to know that the Sixth Circuit, sometimes when sister circuits take a different view, it's because they're applying a different framework, or they just have a different worldview of constitutional law. That's not what's going on here. Chief Judge Sutton embraced this court's analysis, actually shared its constitutional concerns as the statute was originally drafted, but then explained in some great detail why Congress's amendment gives FTC, quote, the final say over the content and enforcement, not just rulemaking, content and enforcement of the rules, thereby eliminating the key distinction, right, using this court's words, that it identified with the Maloney Act, and critically, making the authority subordinate to the FTC, rather than the other way around. Now, let me start with the text of the amendment, because I think that's critical. Texas focused its argument on the text of the amendment and tries at every turn to narrow its scope. First, if we want to apply constitutional principles, the constitutional avoidance principle, you don't read the amendment in order to create a private non-delegation problem. Quite the opposite, under constitutional avoidance, you read the amendment in order to solve the constitutional, the private non-delegation problem. Of course, common sense brings us to that same conclusion. Congress enacted this statute in direct response to this court's opinion to solve the subordination problem. It's not going to tie one hand around the FTC's back when it's trying to give it more power. Both common sense and constitutional principles command that. But here, you don't need the avoidance doctrine, because the plain text of this amendment, you cannot imagine a more plenary delegation of power to an agency. In fact, Texas says in its brief, geez, if you read it plainly as we do, that creates a public non-delegation problem, such that you're giving them too much authority. No one's raised that claim. It says they can abrogate, add to, modify the rules for fair administration to conform to the act, or otherwise, in furtherance and purposes of the act, co-extensive with the act, as Chief Judge Sutton explains in some detail. I'm not surprised that Texas and the other side starts there, because that, of course, is the linchpin of the private non-delegation problem. Does this amendment give the agency broad authority, not over just the enforcement of those rules? Two parts to Chief Judge Sutton's opinion addresses them both and explains exactly why the breadth of that amendment, unless you contort it to conflict with the plain text and create a constitutional problem, solves the constitutional problem. There is no daylight now between the problems identified by this court, the problems that constitutional doctrine identified in Atkins, and in every other case since Atkins, and the issues that have been presented here today. They raise Whitman, the Supreme Court case in Whitman, to suggest that this amendment doesn't solve the problem. Whitman squarely, I wish I would have thought of citing Whitman in the district court. Whitman helps us. What Whitman says is, you judge it on the face of the act. You don't look at how the agency actually implements it if they've given broad authority. In Whitman, just to take a step back, that was a public non-delegation case. The challenger is saying, wait a minute, this is too broad on the face of the statute. Can the agency solve that by taking a narrowing construction? The Supreme Court said, no, we look at what Congress did. Well, yeah, here you look at what Congress did, and the breadth, unlike in Whitman, caused a problem, public non-delegation, it was too broad to the agency. Here, the breadth to the agency solves the private non-delegation problem. As Chief Judge Sutton explained, it's not how the agency exercises its discretion, it's whether Congress gave them the tools to do that. That is the facial question on a private non-delegation trial. Was the FTC put in the saddle by Congress? That's precisely why Chief Judge Sutton said he didn't cite Whitman, but his rationale is all about Whitman. He says the statute is constitutional because it empowers FTC to act whether or not it acts in every hypothetical situation that they want to come out. That's the fundamental legal principle here. Now, let's talk about some of the issues that few of the distinctions that they drew. I think he mentioned guidance, that there's this guidance problem. Look, this is a facial challenge. Under the act, and with their argument on guidance, just to refresh the court's memory, is that the authority is going around and rewriting the rules that the FTC has done, and so showing the authority is exercising predominant authority. But this is a facial challenge on the face of the act. If the authority wants to rewrite a rule, propose a modification to it, it has to do it under 3053A, which means it has to propose it to the commission, and it can't go into effect without approval of the commission. That's for a rule modification. The guidance provision, 3054G, says they can only interpret things and then submit it to the agency, has no legal effect. Now, if their argument is, hey, look, the authority is not following that regime, and they're actually rewriting rules in the guise of an as-applied challenge, they can challenge the guidance and say it exceeds the scope of the authority's power. But on a facial challenge, the statute precludes the very problem they're talking about. They say, hey, authority, if you want to rewrite the rule, you have to do it as a proposed modification under 3053A, and then it's subject to the constitutional amendment. So there is no problem on guidance facially, and this is going to be a recurring theme, facial versus as-applied. Judge Duncan, you asked by enforcement. Of course, this court didn't have occasion to opine on enforcement, but that has been largely an afterthought in this litigation, and I'm talking post-amendment, even on remand, and that's for good reason. That's because as a threshold matter, there is still no allegation that any plaintiff has been harmed by the enforcement procedures. And we're not just up here on a motion to dismiss or on re-judgment or a PI. The district court had a trial. It consolidated this, had a trial. There's not even an allegation, let alone any evidence of harm, and that is because to date, this scheme has been in effect since July 2022, so 15 months. There have been exactly zero subpoenas issued by the authority. There have been exactly zero civil actions filed by the authority. If you're talking about ripeness, this is the quintessential thing about ripeness. This isn't even in the ballpark of being ripe. That's why Chief Judge Sutton said, hey, if you want to bring these sort of challenges not fleshed out here, why don't you bring it in the context of an enforcement challenge like every other case that's reached the Supreme Court in the last few years has done? If, in fact, the authority ever does file a civil action and the FTC doesn't step in and all of these things come to pass, well, guess what? That person can bring an as-applied challenge and we can do it once we actually see how these things play out. Let me ask you a question about the Appointments Clause argument. There is a brief, one of the amicus briefs, spends a great deal of time comparing the authority of the authority, I mean the scope of the authority's authority, I should find a better way to say that, with the board in the PCAOB case, and sort of says, well, look, this is what the board was doing there, all kinds of Appointment Clause problems. Here the authority has arguably even more authority than the PCAOB. What is your, I mean, do you contest that? What's your response to that, Jim? Whether that's true or not, I haven't gone back and compared the line item authorities of the PCAOB. The key point from Free Enterprise Fund is this. Before it got into any of that analysis, before it decided whether there was an appointments removal problem in that case, the first thing it had to decide to do is, hey, is the PCAOB, even though it's called a private entity, like the authority and the statute, is it actually a public entity for appointments and removals purposes? The parties agreed that it was, right? Pardon? Didn't the parties agree? Well, the parties agreed it was, but the Supreme Court didn't just say the parties agreed with it. It then cited a case. What case did it cite? It cited LeBron. What did it quote? Hey, an entity is public for constitutional purposes if it's government created and government appointed. That is the test the Supreme Court has set out. It's in black and white in the Supreme Court. Yeah, I get that. I get that. I mean, but arguably, I mean, do you deny that the authority is in some real sense government created? No, Your Honor. Absolutely not. It was incorporated before this act even passed. Members are not appointed. It was not created by the government. It doesn't operate as a government created entity. It has its own personnel decisions. It does its thing. It would go on as an SRO. If that act was never enacted, it would have gone on as an SRO. There's no difference between that and FINRA, by the way. In fact, FINRA, interestingly, wasn't even created until after the Maloney Act. And if you look at the history, and this is in the district court record, we argued it there. Actually, the SEC got together with an existing SRO and vote the charter for FINRA. So and still that's not government created, right? So the authority, no, it's not government created. It's not appointed. They don't even challenge that under LeBron, this is not a private entity, right? They have gone now to the argument that LeBron is not the right test. It's just whether the official exercises significant government authority. Of course, that's after you've established that it's an actual public official. Then, under Lucia and Buckley, right, the only Supreme Court cases they want to cite Lucia and Buckley, indisputably federal employees. And the only question is, are they an employee or an officer? Yes. Then the Supreme Court has said the test is, do you exercise significant government power? But there is a step before you get there. And that's Free Enterprise Fund. That's Amtrak to, as you pointed out, Judge Duncan. Yeah, I mean, I'm trying to conceptualize this. I mean, what what you're saying is we don't we shouldn't even get into the PCAOB case because here it's a private non-delegation case. And the subordination takes care of the problem that the appointments deal with in the in the in the government. Right. It's a public entity, right? There's two sides. Accountability is treated in two ways. If you're a private entity, it's dealt with through the private non-delegation doctrine. We've got 100 some years of precedent on that. If it's a public entity like PCAOB after applying LeBron, like Amtrak, right, which remanded for the appointments clause problem, you know, Amtrak too is a great example for that, Judge Duncan, because that is a case that had both claims, private non-delegation and appointments clause. DC Circuit and Amtrak once said private entity. We're going to do private non-delegation. Gets to the Supreme Court. The Supreme Court applies LeBron and says, actually, you're a public entity, but we're going to remand for the appointments clause now because now that you're a public entity. So, yes, two sides. It depends if you're private entity, private non-delegation, public entity under LeBron, appointments and removal clause. That's the framework. In fact, David's litigated this court. Judge Hendricks asked them point blank, aren't your two theories mutually exclusive? If you're private, it's private non-delegation. If you're public, then it's appointments. They said yes. They said in their complaint, they're pleading it in the alternative. That's in Gulf Coast complaint. In their briefs, they said mutually exclusive. Even on appeal, their own co-parties say these theories are quote, fundamentally incompatible and mutually exclusive. I'm not a big fan of waiver forfeiture theories, but if there is ever an instance where you can't your position that say, oh, it doesn't matter whether we're public or private. And now the appointments clause applies, as Professor Wurman argued today. Well, that's flatly contradicting what they've argued all along. It's like forfeiture estoppel on steroids. You don't need any of that. You can just go to what the Supreme Court has done. I mean, I think if you brought the authority into government, let's let's let's go with your premise. The authorities outside of government's private. I get that. If you brought it into and then you had a free enterprise fund case, then you would have some problems. Yes. Your Honor, I grant you if we're a public entity, it becomes a lot harder for us. Right. Yeah. Because the FTC can't kick anybody off the right. So but but but they can't get past LeBron. They just can't. That's Supreme Court precedent. What do they have on the other side? They don't they have a law review article, great law review article. It's a lot of your 2007 OLC opinion. That's nice. It contradicts the 1996 one, contradicts what DOJ's consistent position has been all along. Most importantly, it can't contradict Supreme Court cases that came after it, starting with PCOB and Amtrak, too. The last thing I'll say on the appointments clause is we haven't talked about it today, but this circuit has binding circuit precedents and en banc opinion called Riley. It's cited in our briefs. It sets forth the test, which says, quote, at a minimum, this is from 757 of Riley, at a minimum requires, quote, continuing and formalized relationship of employment with the U.S. government before you trigger appointments removals. We obviously don't have a continuing and formalized relationship of employment with the U.S. government between the private board members and the U.S. government. There's no relationship of employment, let alone a formalized, continuing and formalized relationship of employment. I know my time is up. If I can say one last thing on the enforcement, since you asked about it, I got the rightness point out, which I think kills the argument. But if you got beyond that, Judge Englehart, I think this goes to your question. The FTC on the face of the amendment has ultimate authority on the front end over all enforcement related rules. It can modify, add to, abrogate. That doesn't just include the substantive provisions, but includes one set of rules are the enforcement rules. There's a set of rules that are on the books now that are enforcement rules. All of those are under the plenary authority of the FTC. That's under 3053 E. The face of amendment makes that clear. And then on the back end, any sanctions, and you asked this, Judge Duncan, the commission has sua sponte authority. The FTC has sua sponte authority to review any order that comes out of the authority, and it does it at two levels. And this is one way in which it has greater authority than the SEC exercises over FINRA. Not only is that sua sponte authority de novo, but they can collect any additional evidence they want. That's not true in the SEC FINRA framework, which is otherwise identical in terms of enforcement, except the FTC has greater authority than the SEC does over FINRA in that respect. It can not only do a de novo, not only sua sponte, but it can collect its own additional evidence. And in fact, this is not just hypothetical when I talk about this supervisory authority, which is good enough for a facial challenge, but just to give you some comfort. In fact, even before the amendment, the FTC rejected a proposed investigation rule from the authority because it was too broad. That was about the seizure power that you asked about. The authority of proposed a seizure rule and the authorities, the FTC said, no, this is too broad. Go back and change it. Obviously, after the amendment, they can do that and a whole lot more. Okay. Thank you, counsel. Thank you, Your Honor. Mr. Cole, you have some time for rebuttal. Thank you, Judge Duncan. Just a couple of points on rebuttal, if I might. First, make no mistake. What you've just heard from the authority and the commission is, if they're right about the scope of the amendment, that is a power to rewrite statutes passed by Congress. They want to say, look, if the statute says the authority can bring a lawsuit, no problem. 3053E lets us go in there and say, actually, they meant only if the commission allows us to. That's in the enforcement piece. Let's talk about lawmaking. Of course, one of the important things to note is that the consistency review process remains intact. That means that the authority's rules govern the industry unless and until the commission can pump a rule through notice and comment. They say, no problem. We can just delay for 180 days, I don't know, maybe 360 days, maybe indefinitely. We can delay publication in the federal register so as to circumvent the rule that requires them to act in 60 days and then the approval, the rule takes effect. That is the power to frustrate the design that Congress put into place. And if that's what 3053E means, then you have a bigger problem on your hands, and that is the public non-delegation problem. Again, it's a constitutional avoidance issue. I fully agree we don't have a public non-delegation claim here, but if that's what they're saying this statute means, then it is essentially the power to upend the entire design that Congress put into place for the first time. I'll just pause again on free enterprise because there's a reason that the Supreme Court thought it obvious. They used the word obvious. They said it was obvious that enacting rules for the general notice and comment process is not a means for a federal agency to supervise a subordinate. Now they say, well, that's in the removal context, but I don't really follow why that matters. If it's not good enough in the context of the government, it's surely a problem in the context of a private entity exercising legislative and executive power. On FINRA, I think you asked Judge Duncan, does FINRA have any enforcement power? They do have independent enforcement power here, unlike the FTC, and that's 15 U.S.C. 70. I was hoping to compare FINRA's enforcement authority vis-a-vis the SEC with the vis-a-vis the FTC. I see. So FINRA, but the point I think I'm trying to make a little different is that FINRA has a bit greater authority because they can issue, they can go and enforce actions by themselves. I'm not aware that the FTC can do so here. So that's what the executive power is essentially being. Is there a provision in the Maloney Act, I guess, that allows the SEC to shut down an enforcement action by FINRA? I'm not aware of anyone. I guess they would point to the sort of similarly worded statute. I'm not aware of one, but I suppose they would say, look, the sort of parallel under the Maloney Act is what lets that. I think we've got an entire amicus brief on the differences between. We've got a lot of amicus briefs. Yes, we've got a lot of reading. So on the, I'll say briefly for my friends from the Gulf Coast. I don't know. Do you agree or disagree with counsel opposite's assertion that the theories of private non-delegation and appointments clause are mutually incompatible? I think they're all, they are alternative arguments, but we think that helps us because, you know, if this is a, if it's a public, it's a government entity, then you look through the appointments clause issue. If it's not, then it's the private non-delegation issue. So I don't think we really, really dispute that. I mean, those, the crux of the issue is public or private, right? And whether, I mean, and on that, it's whether or not the private entity is dealing with private power or government power. And that's the difference. It was cited in free exercise run there because the parties agreed. LeBron did. So what matters for that purpose under the appointments clause is whether or not the statute empowers them to do something governmental. I see. I have about 46 seconds. So I'll just say this statute is, is unique. Congress did not, with this meager amendment, fix the fatal non-delegation problems plaguing HISA. Again, there's at least three areas that are lawmaking power. It's still not sufficiently subordinated because as we've mentioned time and again, the authority's rules govern unless they can shove a rule from notice and comment rulemaking. The upshot is that for years, it's likely to be the case that the authority's rules govern, not the FTC's. And that goes as well for the enforcement power. They say they can supervise an enforcement through notice and comment rulemaking. And for reasons we've discussed, you've discussed previously, I don't think the informal, the good cause exception under the APA gets there either. I see my time is up unless there's any questions. All right. Thank you, counsel. I really appreciate all the good arguments and the voluminous briefing. And we will take this case under submission. And we are adjourned.